IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TOMMIE LEE ALLEN,

Plaintiff,

v. CIVIL NO.: WDQ-12-0269

ERIC SHINSEKI,

Defendant.

* * * * * * * * * * * * *

MEMORANDUM OPINION

Tommie Lee Allen,[1] *pro se*, sued Secretary of Veterans Affairs Eric Shinseki in the Maryland District Court for Baltimore City. ECF No. 2. Allen alleged, *inter alia*, that the U.S. Department of Veterans Affairs (the "VA") has wrongfully designated him as incompetent and appointed a fiduciary to manage his benefits. *See id.* On January 27, 2012, Shinseki removed the action to this Court. ECF No. 1. For the following reasons, the Court will grant Shinseki's motion to dismiss (ECF No. 15)[2] and deny Allen's motion for "judgment" (ECF No. 14).[3]

---

[1] The Clerk will correct the misspelling of Allen's first name, to "Tommie." *See* ECF No. 2.

[2] Shinseki captioned the motion as a motion to dismiss or, in the alternative, for summary judgment. ECF No. 15. The motion will be treated as a motion to dismiss; the Court will consider the pleadings, matters of public record, and documents attached to the motion that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l*

I. Background[4]

Allen was born in 1955 and currently resides in Baltimore, Maryland.  ECF No. 2 at 1; ECF No. 11-2 at 3.  From October 15, 1973 to October 14, 1976, he served in the Armed Forces of the United States.  ECF No. 11-2 at 3.  Allen was honorably discharged.  *Id.*  From November 3, 1994 to September 9, 1995, Allen was an outpatient at Fulton State Hospital in Fulton, Missouri.  *See* ECF No. 15-2 at 4.  Allen's treatment reports indicated that he suffered from "major depressive reaction" and delusions.  *Id.*

---

*Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (in determining whether it has jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment").

[3] Allen filed a second "motion for judgment," ECF No. 18, which requests that the Court "throw out" the exhibits attached to Shinseki's motion on the grounds that they "detail[] a background check that the VA representatives did to put fear in my children."  ECF No. 18 at 1-2.  The Court will construe this motion as a motion to strike.  Because Shinseki's exhibits are matters of public record that provide helpful historical information, the motion will be denied.  *See* Fed. R. Civ. P. 12(f).  However, the Court notes that Shinseki's exhibits contain unredacted social security numbers and other private information, in violation of Fed. R. Civ. P. 5.2(a) and the Court's Privacy Policy (Nov. 10, 2004).  Shinseki is advised to redact such information in future filings or risk sanctions.

Allen has also moved for a speedy trial.  ECF No. 22.  There is no constitutional right to a speedy trial in civil cases, *see* U.S. Const. amend. VI.  Allen's motion for a speedy trial will be denied.

[4] For Shinseki's motion to dismiss, the well-pled allegations in Allen's complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

On or about October 2, 1995, Allen filed a claim with the VA for service-connected[5] disability compensation and nonservice-connected pension. ECF No. 15-2 at 4, 5. On May 20, 1996, the VA's St. Louis, Missouri Regional Office ("RO") notified Allen by letter that it had denied his disability claim. *Id.* at 2. An enclosed rating decision,[6] dated May 7, 1996, explained that neither Allen's service medical records nor his outpatient treatment reports from Fulton State Hospital contained evidence that Allen's depression occurred during--or was caused by--his military service. *Id.* at 4.[7] The following day, the St. Louis RO rendered a separate rating decision, in which it proposed that Allen be deemed incompetent[8] to administer VA disbursements. ECF No. 15-3 at 2. The May 8 decision acknowledged the VA's

[5] A disability is "service-connected" when it "beg[ins] in military service or was caused by some event or experience in service." ECF No. 15-2 at 4.

[6] A "rating decision" is a VA document that "lists the evidence [in support of or against granting benefits], the decision [to grant or deny benefits], and the reasons for [the decision]." *Understanding the Disability Claims Process*, U.S. Department Veterans Affairs, http://www.vba.va.gov/bln/21/Topics/claims.htm (last updated Nov. 8, 2009).

[7] The VA found that Allen was entitled to a pension. ECF No. 15-2 at 2. However, because Allen's income exceeded the pension income limit, he did not receive any money from the entitlement. *Id.*

[8] The VA defines a "mentally incompetent" person as one who, "because of injury or disease," lacks the mental capacity to "control or manage his . . . own affairs, including disbursements of funds without limitation." ECF No. 15-3 at 2.

presumption in favor of competency. *Id.* The presumption was rebutted in Allen's case, by a "definite finding" of incompetency by a physician. *Id.*

On January 6, 1998, Allen filed a new application[9] for benefits in which he claimed entitlement to service-connected disability and nonservice-connected "permanent and total" disability, both for bipolar disorder. ECF No. 15-4 at 4, 6, 9. On February 13, 1998, the VA responded by letter, stating:

> We have received a medical report showing that you may need help taking care of your VA benefits. Because of this report, we plan to consider you *incompetent*. By *incompetent* we mean that your disabilities make it hard for you to take care of your VA benefits. *If we find you "incompetent," your benefits may be paid to someone else for you.*

ECF No. 15-5 at 2 (emphasis in original). The VA informed Allen that it would render a final decision in 60 days, during which he could challenge the finding of incompetency by submitting new medical evidence or requesting a personal hearing. *Id.*

On May 21, 1998, after 60 days, the VA issued another rating decision. ECF No. 15-6 at 2. The May 21 decision explained that Allen was entitled to a "permanent and total nonservice connected disability evaluation for pension purposes" and officially held that Allen was incompetent to handle

---

[9] The application was received by the VA's Jackson, Mississippi Medical Center, which forwarded it to the Jackson, Mississippi RO. Def.'s Mem. in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. 2.

disbursement of those funds. *Id.*[10] On July 10, 1998, VA Adjudication Officer Jerry Mitchell informed Allen that the VA would take "the necessary actions" to determine if his benefits should be paid to a third party on Allen's behalf. ECF No. 15-7 at 2. Since the late 1990s, the VA has appointed several fiduciaries to manage Allen's benefits. *E.g.*, ECF No. 2 at 10, 11.

On January 29, 2010, Allen requested that the Roanoke, Virginia RO reconsider the VA's incompetency determination. ECF No. 15-9 at 2. Allen also submitted a letter from Licensed Independent Clinical Social Worker ("LICSW") Barbara Garrett. *Id.* at 4. Garrett wrote, "After meeting with [Allen] and evaluating him, it is my professional opinion that [he] is competent and capable enough to handle his own personal and financial affairs." *Id.* The VA responded in February 4 and April 29, 2010 letters. ECF No. 15-10 at 2-3, 8. Although it acknowledged Garrett's recommendation, the VA concluded that

---

[10] The VA considered Allen's most recent treatment reports in reaching its conclusion. ECF No. 15-6 at 2. These reports indicated that, in 1997 and early 1998, Allen had been a patient at the University Hospitals and Clinics in Jackson, Mississippi, and the VA Medical Center in Biloxi, Mississippi. *See id.* at 5-6, 7-9. Upon his discharge from the University Hospitals and Clinics, Allen was diagnosed as suffering from bipolar disorder with "psychotic features." *See id.* at 6.

Allen remained incompetent. *Id.* at 8.[11] The VA informed Allen of his right to appeal the decision within one year of the April 29 letter. *Id.*

Although the record is unclear, it appears that Allen wrote to U.S. Representative Elijah Cummings in 2011 to express concerns about the VA's fiduciary appointment. ECF No. 2 at 5. On December 2, 2011, Congressman Cummings informed Allen that the VA had provided this response:

> Mr. Allen's fiduciary case has been under the jurisdiction of the Waco . . . RO for a number of years. Mr. Allen came to our office beginning in July 2011 and we forwarded his concerns about his fiduciary, who resides in Texas, to the Waco RO. Waco issued a request for a regularly scheduled 3 year field examination for the Baltimore RO to visit Mr. Allen on September 2, 2011. We visited Mr. Allen and completed the field examination on October 31, 2011.
>
> The Baltimore RO felt it was in the best interests of the Veteran to appoint a payee in Maryland, considering he has lived here for several years and in light of his complaints against his previous fiduciary. A copy of the field exam was forwarded to the Waco RO and they are to notify the previous fiduciary of the assignment of a new fiduciary and forward the fiduciary file to the Baltimore RO . . . .

ECF No. 2 at 4.

On December 15, 2011, Allen filed suit in the District Court of Maryland for Baltimore City. ECF No. 2. Allen's

---

[11] In its accompanying rating decision, dated April 26, 2010, the VA emphasized Allen's failure to report for a scheduled competency exam, ECF No. 15-10 at 10, because of which "[e]vidence [that] may have been material to this discussion could not be considered." *Id.*

complaint "protest[s]" the VA's "dangerous fiduciary systems," which have caused him "great losses," and requests receipt of his monthly income of $1125. *Id.*[12] On January 27, 2012, Shinseki removed the action to this Court. ECF No. 1.[13] On February 22, 2012, Allen filed a supplement to his complaint. ECF No. 11. On March 26, 2012, Allen moved "for judgment." ECF No. 14.

On March 28, 2012, Shinseki timely moved to dismiss under Rule 12(b)(1), (5), and (6) of the Federal Rules of Civil

---

[12] Allen later "amended" his complaint to request a monthly income of $1171 "times 12." ECF No. 14 at 4; *see also* ECF No. 20-9 at 1.

Allen alleges further misconduct by the VA, such as that his custodian, Bobbie Edmonds, "caused a V.A. representative" to gossip and "the shelter caused a person to pull a knife on me." *See* ECF No. 2 at 1, 15. Allen also alleges that his new fiduciary, Perry Becker, and VA field examiner Lynette Millings instructed Allen's apartment manager Keesha Fields to enter his apartment. ECF No. 14 at 6; ECF No. 20 at 3; ECF No. 20-1 at 3. While inside, Fields allegedly "tampered" with Allen's property and "possibly" accessed his bank account numbers. ECF No. 14 at 6; ECF No. 20 at 3; ECF No. 20-1 at 3. Allen also alleges that Becker and the VA are "playing politics." ECF No. 24 at 1. Finally, Allen states that the VA kidnapped his son, Michael A. Allen. ECF No. 23 at 3. Allen requests that the Court "investigate" the VA fiduciary system for other "abuse" and "place a restriction in a fashion of protecting my constitutional rights" and his son's rights. ECF No. 11 at 7; ECF No. 23 at 3. Allen has filed complaints with Maryland Governor Martin O'Malley, the Federal Bureau of Investigation, and U.S. Attorney General Eric Holder. *See* ECF No. 14 at 6; ECF No. 20-7 at 1. However, Allen has not filed an administrative tort claim against the United States for any of the misconduct alleged in this suit. ECF No. 17.

[13] Shinseki based removal jurisdiction on, among other grounds, 28 U.S.C. § 1442(a)(1) (removal by a federal officer).

Procedure. ECF No. 15; *see* ECF No. 13. On March 29, 2012, Shinseki filed a supplement to his motion to dismiss. ECF No. 17. On April 10, 2012, Allen filed a second "motion for judgment." ECF No. 18. On April 11, 2012, Shinseki responded to Allen's second motion for judgment. ECF No. 19.[14] On April 26, 2012, Allen filed a supplement to his second motion for judgment. ECF No. 20. On June 12, 2012, Allen filed a second supplement to his second motion for judgment. ECF No. 21. On July 11, 2012, Allen moved for a speedy trial. ECF No. 22. On October 31, 2012, Allen filed a supplement to his speedy trial motion. ECF No. 23.

## II. Analysis

Shinseki has moved to dismiss for insufficient service of process, lack of subject matter jurisdiction, and failure to state a claim. ECF No. 15. Because Allen is a *pro se* litigant, his filings will be construed liberally, even if his arguments and pleadings are "inartful[]." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted).

### A. Insufficient Service of Process

#### 1. Standard of Review

Under Fed. R. Civ. P. 12(b)(5), a defendant may move to dismiss for insufficient service of process. If service is

[14] Shinseki indicated that, because Allen's second motion for judgment raised no new arguments, a substantive response to the motion was unnecessary. ECF No. 19 at 1.

contested, the plaintiff "bears the burden of establishing [its] validity." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006). "In cases removed to federal court, state law determines whether service of process was properly effected prior to removal." *Ngabo v. Le Pain Quotidien*, No. DKC 11-0096, 2011 WL 978654, at *1 (D. Md. Mar. 17, 2011). Under Maryland law, service is made upon a federal officer or agency by serving the "United States" and the officer or agency. Md. Rule 3-124(n). Service is made upon the United States by "serving the [U.S.] Attorney for the District of Maryland . . . and by serving the Attorney General of the United States at Washington, District of Columbia." Md. Rule 3-124(m).

"Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe [the applicable rules of service] liberally." *O'Meara*, 464 F. Supp. 2d at 476. But the "plain requirements for the means of effecting service may not be ignored." *Id.* Although insufficient service of process does not necessarily warrant dismissal, the court may dismiss the complaint or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir. 1983).

2. Shinseki's Motion

Shinseki has moved to dismiss for insufficient service of process. ECF No. 15. Because Shinseki has actual notice of Allen's complaint, *see O'Meara*, 464 F. Supp. 2d at 476, the Court will not dismiss the complaint on this ground. *See Vorhees*, 697 F.2d at 576.

B. Subject Matter Jurisdiction

1. Standard of Review

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

2. Shinseki's Motion

Shinseki argues that this Court lacks subject matter jurisdiction over Allen's claim because the United States has not waived its sovereign immunity, ECF No. 15-1 at 4-7, and because 38 U.S.C. § 511 bars Allen's claim, *id.* at 7-15.[15]

---

[15] Shinseki also argues that Allen's claim is jurisdictionally barred by the Tucker Act, 28 U.S.C. § 1346(d), and by his

a. Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "Sovereign immunity cannot be avoided by suing individual federal agencies, such as the VA, *eo nomine*."[16] Because Allen has sued Secretary Shinseki in his official capacity, apparently to challenge his fiduciary appointment,[17] the Court must dismiss his complaint unless the United States has "unequivocally" waived its sovereign immunity from Allen's claim. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks omitted).

b. Waiver Under the Administrative Procedure Act

The Administrative Procedure Act (the "APA") contains a limited waiver of federal sovereign immunity. *See* 5 U.S.C. § 702. Section 702 provides that "[a]n action in a court of the

---

failure to exhaust administrative remedies as required by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. ECF No. 15-1 at 15-17; *see* ECF No. 17.

[16] *Judkins v. Veterans Admin.*, 415 F. Supp. 2d 613, 616 (E.D.N.C. 2005) *(citing Blackmar v. Guerre*, 342 U.S. 512, 514 (1952)). Rather, "[i]n deciding whether an action is . . . one against the Government, the identity of the named parties defendant is not controlling." *Stafford v. Briggs*, 444 U.S. 527, 542 n.10 (1980). The doctrine is implicated only when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotation marks and citations omitted).

[17] *See, e.g.*, ECF No. 14 at 1.

United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."

However, "[n]othing" in § 702 "confers authority to grant relief if any other statute *that grants consent to suit* expressly *or impliedly* forbids the relief which is sought." *Id.* (emphases added). Even assuming that Allen seeks relief other than a monetary judgment, Congress has provided Allen an alternate channel of review under 38 U.S.C. §§ 511(a), 7104(a), 7252(a) and 7292. *See infra* Part II.B.2.b. Thus, the APA's waiver of sovereign immunity does not apply.[18]

---

[18] *In re Guardianship & Conservatorship of Blunt*, 358 F. Supp. 2d 882 (D.N.D. 2005), is not to the contrary. In *Blunt*, the court relied on § 702 in exercising subject matter jurisdiction over a veteran's challenge to the VA's decision to make his benefits payments directly to his Veterans Home. *Id.* at 884. The *Blunt* court emphasized that fiduciary determinations were unreviewable under § 511. *Id.* at 890-91. At the time, this was true. *See Willis v. Brown*, 6 Vet. App. 433, 435-36 (1994) (dictum). But the U.S. Court of Appeals for Veterans Claims, *see infra*, has since expressly held that it has jurisdiction to consider claims relating to VA fiduciary appointments. *Freeman v. Shinseki*, 24 Vet. App. 404, 416-17 (2011). *Freeman* calls into question *Blunt*'s rationale that, because such claims were unreviewable by the veterans' courts, the APA waived sovereign immunity for their review in the federal district courts. *See Blunt*, 358 F. Supp. 2d at 891.

c. Applicability of 38 U.S.C. § 511(a)

When applicable, 38 U.S.C. § 511(a) operates to confirm--and conditionally waive--federal sovereign immunity.[19] Under § 511(a), the Secretary of Veterans Affairs is authorized to "decide all questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits . . . to veterans." Subject to subsection (b), the Secretary's decision on "any such question" is "final and conclusive" and may not be reviewed by "any other official or by any court." 38 U.S.C. § 511(a).

Under § 511(b)(4), the Secretary's decision is appealable as to matters covered by chapter 72[20] of the same title. After initially seeking review by the Board of Veterans' Appeals (the "BVA"), § 7104(a), a dissatisfied veteran may appeal to the U.S. Court of Appeals for Veterans Claims (the "CAVC"), which has exclusive jurisdiction over BVA decisions. § 7252(a). From the CAVC, appeal can be made to the U.S. Court of Appeals for the Federal Circuit, followed by petition for writ of certiorari to the Supreme Court of the United States. § 7292. The statute

---

[19] *Compare Judkins*, 415 F. Supp. 2d at 616 (construing § 511 as a "waiver" of sovereign immunity), *with Ramnarain v. U.S. Veterans Admin.*, No. 11 Civ. 4988 (BMC) (CLP), 2012 U.S. Dist. LEXIS 43289, at *2 (E.D.N.Y. Mar. 28, 2012) (construing § 511 as a "confirmation" of sovereign immunity).

[20] Chapter 72 establishes the U.S. Court of Appeals for Veterans Claims. 38 U.S.C. § 7251; *see infra*.

confirms sovereign immunity and simultaneously waives such immunity (by permitting review of such claims in enumerated courts).

The issue, then, is whether the VA's collateral decision to deem Allen "incompetent," and subsequently appoint and supervise his fiduciary, was rendered "under a law that affects the provision of benefits to veterans," 38 U.S.C. § 511(a), and is thus subject to limited review by the BVA, the CAVC, the Federal Circuit, and the Supreme Court. *Id.* §§ 7252(a), 7292. The statute confirms that it was. Under 38 U.S.C. § 5502(a)(1),

> Where it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to . . . *some other fiduciary* for the use and benefit of the beneficiary, regardless of any legal disability on the part of the beneficiary (emphasis added).

Under § 5502(b),

> Whenever it appears that any fiduciary, in the opinion of the Secretary, is not properly executing or has not properly executed the duties of the trust of such fiduciary or has collected or paid, or is attempting to collect or pay, fees, commissions, or allowances that are inequitable or in excess of those allowed by law for the duties performed or expenses incurred, or has failed to make such payments as may be necessary for the benefit of the ward or the dependents of the ward, then the Secretary may appear, by the Secretary's authorized attorney, in the court which has appointed such fiduciary . . . and make proper presentation of such matters . . . .

Implementing regulations similarly authorize the VA to adjudge a veteran's competency and, if necessary, to pay his

benefits to his duly recognized fiduciary.[21]

The VA's decision to deem Allen "incompetent"--and to appoint and supervise Allen's fiduciaries--was made "under a law that affects the provision of benefits to veterans," 38 U.S.C. § 511(a). This Court lacks subject matter jurisdiction to examine that decision. *See id.* §§ 7252(a), 7292; *see also Ramnarain*, 2012 U.S. Dist. LEXIS 43289, at *1 ("Congress has provided plaintiff with a mechanism to seek review of the VA's determinations, but it is not in this Court.").[22]

---

[21] *See* 38 C.F.R. § 3.850(a) ("Payment of benefits to a duly recognized fiduciary may be made on behalf of a person who is mentally incompetent . . . when it is determined to be in the best interest of the beneficiary by the Veterans Service Center Manager"); *id.* § 3.353 (defining mental incompetency and providing that rating agencies have the "sole authority" to make official determinations of competency and incompetency "for purposes of" benefit disbursements); *id.* § 13.55(a) ("The Veterans Service Center Manager is authorized to select and appoint . . . the person . . . best suited to receive [VA] benefits in a fiduciary capacity for a beneficiary who is mentally ill (incompetent).").

The VA's competency determinations and fiduciary appointments are within the scope of § 511(a). *See, e.g.*, *Carney v. Dep't of Veterans Affairs*, No. WMN-12-631, 2012 WL 2681414, at *2 (D. Md. July 5, 2012); *Ramnarain*, 2012 U.S. Dist. LEXIS 43289, at *1; *Judkins*, 415 F. Supp. 2d at 617-18; *Carney v. G.I. Jane*, No. Civ.A. B-03-173, 2005 WL 2277490, at *1-2 (S.D. Tex. Sept. 16, 2005); *Whitmire v. U.S. Veterans Admin.*, 661 F. Supp. 720, 721-22 (W.D. Wash. 1986).

[22] This is so even if Allen's objection to the VA's decision is "cloaked in constitutional terms," *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994), because constitutional questions are "no less 'questions of law'" committed to the Secretary's discretion under § 511(a) than those "involving the application of the statutes governing benefit determinations." *Judkins*, 415 F. Supp. 2d at 618 (*citing Beamon v. Brown*, 125 F.3d 965, 972-74

C. Failure to State a Claim

1. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the

---

(6th Cir. 1997); *Zuspann v. Brown*, 60 F.3d 1156, 1158-60 (5th Cir. 1995); and *Hicks v. Veterans Admin.*, 961 F.2d 1367, 1369-70 (8th Cir. 1992)).

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2. Shinseki's Motion

Construing Allen's complaint liberally,[23] he appears to seek damages under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for the VA's alleged role in a warrantless, unconsented-to entry into his home. ECF No. 11 at 5; ECF No. 14 at 3, 6; ECF No. 20 at 3; ECF No. 20-1 at 3. Shinseki objects that "no *Bivens* action lies against VA employees for actions in connection with a benefit claim"[24] and, alternatively, that Allen has failed to meet the heightened pleading standard of *Dunbar Corp. v. Lindsay*, 905 F.2d 754, 764 (4th Cir. 1990). ECF No. 15-1 at 17-18.

---

[23] *Erickson*, 551 U.S. at 94.

[24] The Court rejects Shinseki's first argument. There is no connection between Allen's *Bivens* allegations and the benefits claim discussed above such that 38 U.S.C. § 511(a) precludes review of the allegations. *See generally* ECF No. 15-1 at 17-18 (*citing Zuspann*, 60 F.3d at 1160-61; *Sugrue*, 26 F.3d at 12; and *Hicks v. Small*, 842 F. Supp. 407, 410-12 (D. Nev. 1993), *aff'd*, 69 F.3d 967 (9th Cir. 1995)).

The Fourth Amendment to the U.S. Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Warrantless searches of a person's home by a state actor are presumptively unconstitutional. *Kyllo v. United States*, 533 U.S. 27, 32 (2001). A federal agent's violation of this Amendment may give rise to a cause of action for damages. *Bivens*, 403 U.S. at 389.

Complaints against federal officials for constitutional torts must "clearly set forth such facts that will show the existence of the clearly established constitutional right and what the defendants did to violate it--who did what to whom and why." *Awalt v. Whalen*, 809 F. Supp. 414, 416 (E.D. Va. 1992) (internal quotation marks omitted). A "heightened pleading standard" is appropriate in such cases. *See Dunbar*, 905 F.2d at 764.

Allen asserts that VA fiduciary Perry Becker, and VA field examiner Lynette Millings, "instructed" Allen's apartment manager Keesha Fields to enter his apartment without his consent. ECF No. 11 at 5; ECF No. 14 at 3, 6; ECF No. 20 at 3; ECF No. 20-1 at 3. While inside, Fields allegedly "destroy[ed]"

Allen's property[25] and "possibly" accessed his bank account numbers. ECF No. 20-1 at 3. Allen has alleged a warrantless--and unconsented-to--entry into his home by a state actor.[26] Further, the acts complained of violate a "clearly established constitutional right," i.e., the Fourth Amendment protection against unreasonable government searches and seizures. *Awalt*, 809 F. Supp. at 416. That Allen may be unable to prove the allegations is immaterial; the facts alleged need only be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Although Allen has pled a Fourth Amendment violation, his claim must be dismissed, because Shinseki--the only named defendant--is not alleged to have known about or acquiesced in the search.[27] Because Allen's claim does not plead with particularity Shinseki's personal involvement in the alleged violation, he has failed to state a claim upon which relief can be granted.[28]

---

[25] While inside, Fields allegedly poked pinholes in one of Allen's pictures and in his underwear. ECF No. 14 at 3.

[26] For the sake of Allen's argument, the Court will assume that Fields's conduct pursuant to Perry's and Millings's alleged "instruction" was "state action."

[27] *See, e.g.*, *Wadhwa v. Sec'y Dep't of Veterans Affairs*, No. 07-3301, 2010 WL 1223591, at *3 n.10 (E.D. Pa. Mar. 29, 2010), *aff'd*, 396 F. App'x 881 (3d Cir. 2010).

[28] *Id.*

III. Conclusion

For the reasons stated above, the Court will grant Shinseki's motion to dismiss.

12/6/12
Date

William D. Quarles, Jr.
United States District Judge